IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

RICHARD HALLOCK,

                              Plaintiff,

                                                        Civ. Action No.
        v.                                              6:09-CV-1141 (DNH/DEP)

UNITED STATES OF AMERICA,

                              Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

RICHARD HALLOCK, *Pro Se*
3965 1st Avenue NW
Naples, Florida 34119

FOR DEFENDANT:

HON. RICHARD S. HARTUNIAN          CHARLES E. ROBERTS, ESQ.
United States Attorney             Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, New York 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

        Richard Hallock, a former New York resident who currently resides

in Florida and is proceeding *pro se* in this matter, has filed a pleading styled as a motion for return of property, pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure.[1]   *See* Dkt. No. 3.  In his motion, the plaintiff states that the Department of Homeland Security (formerly the United States Customs Service), Department of the Treasury, United States Marshal Service, and United States Postal Service conducted a search and seizure at his residence pursuant to a warrant issued by this court on June 5, 2000.  *See* Plaintiff's Motion (Dkt.  No. 1) at ¶ 5, Exh. A; Criminal Docket No. 5:00-mj-00193 (DEP).  During the search, which was conducted on June 8, 2000, agents allegedly seized computer equipment and the computer data stored on that equipment, including but not limited to computer source codes, manuscripts, credit card billing statements, and photographs of children.  *Id*. at ¶ 6, Exh. B.  Plaintiff maintains that while his seized property was returned on December 21, 2000, multiple hard drives were damaged and all computer data stored within them was destroyed, and that the United States has kept duplicate copies of the hard drives, thus in effect retaining his property.  *See Id.* at ¶ 9, Exh. D.

---

[1]    Since criminal proceedings are no longer pending against Hallock, the court has construed his motion for return of property as a claim for civil equitable relief. *See Polanco v. United States Drug Enforcement Admin.*, 158 F. 3d 647, 649 (2d Cir. 1998); *Rufu v. United States*, 20 F.3d 63, 65 (2d Cir. 1994) (holding that if a motion for return of seized property is "made after the termination of criminal proceedings against the defendant . . . such a motion should be treated as a civil complaint for equitable relief.").

Plaintiff further alleges that the retention of his property has resulted in violations of numerous of his constitutional rights and demands an order directing its immediate return.

The United States has responded to Hallock's motion, asserting that the proceeding is barred by the applicable statute of limitations as well as the doctrine of *res judicata*.  In reply, plaintiff asserts that the statute of limitations should be equitably tolled and that *res judicata* is not applicable.

Having fully considered the issues raised, I recommend that certain of the plaintiff's claims be dismissed and that a hearing be held to determine whether plaintiff has standing to pursue the claims set forth in his application, whether the statute of limitations should be equitably tolled, and whether the United States remains in possession of the plaintiff's property.

I.    BACKGROUND

Plaintiff alleges that at the relevant times he was an officer and the majority shareholder of a family operated computer software publishing business operated out of his residence at 194 Ferncliff Road, Mohawk, New York 13407.  Plaintiff's Motion (Dkt. No 1) ¶¶ 23-26.  In June of 2008, following the identification of Hallock as a suspect in a child pornography investigation, the United States obtained and executed a search warrant

3

at plaintiff's property, seizing nine computers, thirteen hard drives, and all of the computer data contained on the those drives.  *Id*. at ¶¶ 27-28 and Exh. A.  Hallock was never formally charged in connection with the criminal investigation and, according to plaintiff, after inspection of his computers a federal computer forensic expert determined that none of the data seized was of any evidentiary value.[2]  *Id.* at ¶¶ 19, 31.  Plaintiff further asserts that while holding plaintiff's property, the United States made mirror image copies of each of thirteen hard drives.  *Id.* at ¶ 30.

Plaintiff alleges that during the week of September 14, 2000, the United States offered to return all of the seized property on the condition that Hallock sign a hold harmless agreement; Hallock declined to execute the proffered argument, however.  Plaintiff's Motion (Dkt. No. 1) ¶ 32. Plaintiff admits that the seized property was ultimately returned to him on December 21, 2000.  *Id*. at ¶ 33.  According to Hallock, however, within three hours of receiving the returned property he discovered that several computers had been irreparably damaged and that none of the critical computer data contained on the seized hard drives had been returned.  *Id.*

---

[2]    In a previous lawsuit, plaintiff's wife, Susan Hallock, alleged that the information used as the basis for the search warrant was mistaken. *See Hallock v United States*, 253 F. Supp.2d 361, 363 n.1 (N.D.N.Y. 2003) ("*Hallock I*").  According to Ms. Hallock, while in the course of making lawful credit card purchases on the internet, her husband was the victim of "identity theft", whereby his identifying information was used to establish a child pornography web site.  *Id.*

4

at ¶ 34.  More specifically, plaintiff claims that he was unable to recover any of the data from the hard drives seized and temporarily retained by the defendant. *Id.*

Plaintiff asserts that on December 21, 2000 he notified the United States of the damage, and made repeated demands to government officials at that time and later for restoration of the destroyed hard drives and lost data. Plaintiff's Motion (Dkt. No. 1) ¶ 32.  Hallock states that on April 27, 2005, the United States delivered to him a hard drive purportedly containing thirteen recoverable "EnCase" images that would permit the restoration of the his computer data as it originally existed at the time of seizure.  *Id*. at ¶ 37.  Hallock claims, however, that his attempts at restoring the hard drive were successful for only seven of the thirteen hard drives.  *Id.*

Plaintiff further alleges that on July 2, 2007, the United States delivered to him, through the court, several DVD disks, representing that they contain all of the computer data from five of the seized hard drives, allegedly exactly as they had existed when seized.  Plaintiff's Motion (Dkt. No. 1) ¶ 38.  After comparing the disks provided with the EnCase report listing that the United States had previously provided, the plaintiff claims to have discovered that the DVD disks were not complete, and there was considerable missing data.  *Id.*  In sum, plaintiff asserts that on three

5

separate occasions the defendant has claimed to have returned all of the computer data that is contained on the hard drives seized, but in each instance he found that considerable data remains missing and unaccounted for. *Id.* at ¶ 39. According to Hallock, as of the date of the his motion, the United States continued to hold non-evidentiary property that belongs to him. *Id*.

II.    PROCEDURAL HISTORY

Plaintiff commenced this proceeding on October 9, 2009, Dkt. No. 1, but did not pay the filing fee until directed to do so by the court, Dkt. No. 3.[3] Upon plaintiff's payment of the filing fee, the court directed that the clerk serve plaintiff's motion upon the United States Attorney, who had already filed a notice of appearance in the proceeding, Dkt. No. 2, and ordered that the defendant file an answer to the motion within sixty days. Dkt. No. 4. In his motion, plaintiff alleges that the United States has violated his First, Fourth, Fifth and Fourteenth Amendment Rights.

In response to plaintiff's motion, the United States has filed only a memorandum of law, arguing that his claims are barred by the applicable

_____

[3]      As will be seen, this is the third in a series of rather extensive legal proceedings emanating from the seizure of Hallock's property. *See Hallock I*, 253 F. Supp.2d 361; *Hallock v. Bonner*, 281 F. Supp.2d 425 (N.D.N.Y. 2003), *aff'd* 387 F.3d 147, *judgment vacated by Will v. Hallock*, 546 U.S. 345, 126 S. Ct. 952 (2006), on remand, 567 F. Supp.2d 334 (N.D.N.Y. 2008), aff'd, 343 *Fed. App'x* 663 (2d Cir. 2009) ("*Hallock II*").

statute of limitations and, in light of previous lawsuits filed by his wife, Susan Hallock, by the doctrine of *res judicata*.  In his reply, plaintiff asserts, as he does in his original moving papers, that the statute of limitations should be deemed to have been equitably tolled, and additionally that *res judicata* does not bar this lawsuit because the prior actions do not share identical claims, and the current claims could not have been joined in those proceedings.

Plaintiff's motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.    ANALYSIS

A.     Rule 41(g)

As was previously noted, plaintiff initiated this proceeding by motion brought pursuant to Federal Rule of Criminal Procedure 41(g),[4] which provides that:

> [a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on

_____

[4]
        Rule 41(g) was previously designated as 41(e), and was amended without substantive change in 2002.  *See Adeleke v. United States*, 355 F.3d 144, 147 n.1 (2d Cir. 2004).

> any factual issue necessary to decide the motion. If it grants
> the motion, the court must return the property to the movant,
> but may impose reasonable conditions to protect access to the
> property and its use in later proceedings.

Fed. R. Crim. P. 41(g).  A person is "aggrieved" under Rule 41(g), if he or she has a recognizable interest in the property seized or the premises searched.  *United States v. Brown*, 274 F. Supp. 561, 562 (S.D.N.Y. 1967).  To prevail on a Rule 41(g) motion, the moving party must demonstrate that (1) he or she is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the government's need for the property has ended. *Ferreira v. United States*, 354 F. Supp.2d 406, 409 (S.D.N.Y. 2005).

The Second Circuit has not addressed the question of which party bears the burden of proof in connection with a Rule 41(g) application, and there seem to be differing views on this issue.  *Compare Sash v. United States*, No. 09 Civ. 450, 2009 WL 3007379, at *3 (S.D.N.Y. Sept. 22, 2009) ("The moving party in these cases has been [accused] of a crime and he is the one seeking relief from the court.")[5] *with Santos v. United States*, Nos. 04 Civ. 6716, 2005 U.S. Dist. LEXIS 4224, at *3 (S.D.N.Y.

_____

[5]      Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

Mar. 17, 2005) ("At the conclusion of a criminal proceeding, the evidentiary burden for a Rule 41(g) motion shifts to the Government because there is a presumption that the person from whom the property was allegedly taken has a right to its return.") (internal citation and quotations omitted); *see also United States v. Chambers*, 192 F.3d 374, 377 (3d Cir.1999) (holding that burden, on 41(g) motion, "shifts to the government when the criminal proceedings have terminated"); *United States v. Nelson*, 190 Fed. App'x 712, 715 (10th Cir.2006) ("The defendant bears the burden of establishing under Rule 41(g) that the retention of the property by the government is unreasonable.") (internal citation and quotations omitted), and 3A Charles Alan Wright, Nancy J. King & Susan R. Klein, Federal Practice and Procedure § 673 (3d ed. 2004) ("The movant is required to show that he is entitled to lawful possession of the property.").  In this case, the moving party was never charged with a crime and there appears to be no justification for the defendant's retention of his property.  For these reasons, in my view, it seems reasonable to require the government to demonstrate why the property in issue should not be returned.

　　As the government notes, there seems to be a threshold factual

issue as to plaintiff's alleged interest in the property.  Plaintiff alleges that

he has standing to bring this claim because he is "the rightful owner of the

property that was seized and that is now held in detention by Defendant."

Plaintiff's Motion (Dkt. No. 1) ¶ 15.  Plaintiff's wife Susan, it should be

noted, brought *Hallock I* as President of Ferncliff Associates ("Ferncliff"),

Inc., d/b/a Multimedia Technology Center.  *See Hallock I*, 253 F.Supp. at

361.  In the current case Richard Hallock alleges in his complaint that he

had a "family operated computer software publishing business", of which

he alleges to be an officer and majority shareholder, and which was

located at 194 Ferncliff Road, Mohawk, New York.  Plaintiff's Motion (Dkt.

No. 1) at ¶¶ 23-25.  In *Hallock I* the court observed that "[194 Ferncliff

Road in Mohawk, New York] served as the residence of [Susan] Hallock

and her husband, and as business offices for Ferncliff [ ].  Pursuant to the

search warrant, the agents seized [items] that allegedly had been, or were

being, used by Hallock's husband to commit certain child pornography

offenses [ ]."  *Hallock I*, 252 F.Supp.2d at 363.  Although Richard Hallock

claims to be a majority shareholder in Ferncliff, Susan Hallock claimed to

be the sole shareholder of Ferncliff in *Hallock I*.  *Hallock I*, 253 F.Supp.2d

at 361. Given these conflicting allegations, it is not clear that plaintiff has a

recognizable interest in the property at issue and, accordingly, standing to bring this motion.

Additionally, the plaintiff has alleged that the defendant remains in possession of his property, having retained copies of all of the information on the hard drives.  In its response to the motion, the United States has not submitted any affidavits, nor has it addressed the specific issue of whether it has maintained copies of plaintiff's computer data, and if so, why it should not be returned to the plaintiff.  As a result, questions of fact remain on these issues.

 "[U]nder the plain language of the rule [41(g), [the court] is required to 'receive evidence on any factual issue necessary to decide the motion,' [but] this requirement can be satisfied by sworn affidavits, and the Court need not hold a hearing."  *Id.* (citing *United States v. Cardona-Sandoval*, 518 F.3d 13, 17 (ist Cir. 2008) and *United States v. Stevens*, 500 F.3d 625, 629 (7th Cir. 2007)).  In light of the factual issues identified above, as well as those discussion of that follows, however, I have concluded that an evidentiary hearing must be held before the plaintiff's motion can be decided.

     B.    <u>Statute of Limitations</u>

Instead of addressing the merits of plaintiff's motion, the United States asserts that it should be denied as untimely.  Because "[n]o statute of limitations governs motions for return of property under Rule 41(g)," *United States v. Sims*, 376 F.3d 705, 708 (7th Cir. 2004), the six-year catch-all statute of limitations for civil actions against the federal government is applied to certain Rule 41(g) motions. *See* 28 U.S.C. § 2401(a) ("[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues.").  When property is seized and not returned or forfeited, "the claimant knows that he has a present right to its return, and shouldn't be permitted to postpone his request for its return indefinitely." *Bertin v. United States*, 478 F.3d 489, 493 (2d Cir. 2007) (quoting *Sims*, 376 F.3d at 708).  Accordingly, a Rule 41(g) claim is deemed to have accrued when the party seeking return of property "discovered or had reason to discover that his [or her] property" was improperly seized. *Id.*

Defendant contends that, by his own admission, plaintiff became aware on December 21, 2000 that the returned seized property was irreparably damaged, and therefore the six-year statute of limitations for return of the property at issue has long since expired.  Indeed, plaintiff

does not dispute that the property originally was returned to him on December 21, 2000, and that he almost immediately discovered that the computer data had been destroyed.  Plaintiff claims, however, that thereafter he diligently attempted to pursue his available legal remedies, immediately placing the United States on notice that the returned property was damaged, commencing the two prior lawsuits, and continuing to demand that defendant restore his hard drives.  Plaintiff further alleges that he did not become aware that the United States maintained a copy of his intellectual property until April 27, 2005, and that the statute of limitations should therefore run from that date, making his claim timely.

Equitable tolling is a doctrine applied in "'rare and exceptional circumstances,' where [the court finds] that 'extraordinary circumstances' prevented a party from timely performing a required act and that party 'acted with reasonable diligence throughout the period he [sought] to toll.'" *Czernicki v. U.S. Dep't of Justice*, 137 Fed. App'x 409, 410-11, 2005 WL 1498456, at *1 (2d Cir. 2005) (citing and quoting *Doe v. Menefee*, 391 F.3d 147, 159-60 (2d Cir. 2004)) (cited in accordance with Fed. R. App. Proc. 32.1). The doctrine may be applied where a statute of limitations has passed due to "'defective pleading'" or the defendant's "'misconduct'" in

preventing the plaintiff from bringing his claim or learning of the cause of action.  *Id.* (citing *Irwin v. Dep't of Veterans Affairs*, 489 U.S. 89, 96, 111 S. Ct. 453,(1990); *Kronisch v. United States*, 150 F.3d 112,123 (2d Cir. 1998).

According to Hallock, he first learned that the United States maintained a copy of his computer hard drives on April 27, 2005 through discovery undertaken in the prior litigation.  The United States has not directly addressed this factual issue, and the court cannot determine on the record before it whether Hallock knew or had reason to know prior to that date that the defendant maintained copies of his computer hard drives.  This and other unresolved material factual issues are best resolved by conducting a hearing before the court to assist the court in determining whether the statute of limitations applying the plaintiff's motion for the return of his property should be equitably tolled.

In addition to alleging that his property was improperly seized and detained, plaintiff's pleading also asserts a host of constitutional violations.  In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999 (1971), the Supreme Court recognized an implied private cause of action for damages against

federal officers who violate a citizen's constitutional rights.  *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66-67, 122 S. Ct. 515, 519 (2001) (discussing the origin of *Bivens* claims).  Though plaintiff's pleading does not expressly demand damages for the alleged constitutional violations, to the extent that plaintiff seeks such relief, the court construes the constitutional claims as a *Bivens* action.  *Bivens* actions, although not precisely parallel, are the federal analog to section 1983 actions against state actors, and are subject to a three-year statute of limitations.  *See Chin v. Bowen*, 833 F.2d 21, 24 (2d Cir. 1987).

All of the constitutional violations alleged by Hallock relate to the seizure of his property on June 8, 2000.  Accordingly, to be timely any claim for damages would have to have been brought no later than June 8, 2003.  Since plaintiff's motion was not filed until November of 2009, any *Bivens* claim is untimely and should be dismissed.

C.   <u>*Res Judicata*</u>

Defendant next contends that this proceeding is precluded as a result of the determinations in *Hallock I* and *Hallock II*.  In *Hallock I* Susan Hallock, plaintiff's wife, brought an action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. 1346, against the United States alleging

negligent destruction of property, conversion, negligent bailment, larceny,

misfeasance, and personal injury in connection with the seizure of items

discussed above.  *See Hallock I*, 253 F.Supp.2d at 361.  In granting the

United States' motion to dismiss, the district court held that the

government was entitled to sovereign immunity as to all claims.  *Id.*  In

*Hallock II*, Susan Hallock, individually and on behalf of her corporation,

brought a *Bivens* suit against the United States Treasury Department and

Customs agents, alleging that they intentionally damaged the seized

computer equipment in violation of her Fifth Amendment rights and

improperly seized the property in violation of the Fourth Amendment.

*Hallock II*, 387 F.3d 147.  The district court denied the defendants' motion

for judgment on the pleadings in the action, and the Second Circuit

affirmed, holding that the prior FTCA judgment in *Hallock I* did not bar a

subsequent *Bivens* action because the previous lawsuit was not a proper

action under the FTCA.  *Id.*

On defendants' appeal of that determination, the Supreme Court

granted the request for *certiorari* review and ultimately vacated the

Second Circuit's decision, finding that the court lacked jurisdiction to

entertain the appeal.   The matter was remanded with instructions to

dismiss the appeal for lack of jurisdiction.  546 U.S. at 355, 126 S.Ct. 961.

Following the remand, the defendants moved for summary judgment, and

the district court granted the motion holding that there was no evidence

that the named defendants were personally involved in the seizure and

retention of plaintiff's property, and therefore they could not be held liable

for the alleged constitutional violations.  567 F.Supp.2d 334.  That

determination was later affirmed by the Second Circuit.  343 Fed.App'x

633 (2d Cir. 2009).  Plaintiff argues that these prior lawsuits do not bar the

present proceeding because claims asserted in those proceedings are not

identical to those asserted here.

"The preclusive effect of a judgment is defined by claim preclusion

and issue preclusion, which are collectively referred to as 'res judicata.'"

*Taylor v. Sturgell*, 553 U.S. 880, __ 128 S.Ct. 2161, 2171(2008).  While

under claim preclusion a final judgment forecloses successive litigation of

the very same claim regardless if relitigation of the claim raises the same

issues as in the prior suit, issue preclusion bars successive litigation of an

issue of fact or law actually litigated and resolved by a court, even if the

issue recurs in a different context in a new claim.  *Taylor,* 128 S.Ct. at

2171, 553 U.S. at ___ (citing *New Hampshire v. Maine,* 532 U.S. 742,

748-49, 121 S. Ct. 1808, 1814 (2001)).  Both doctrines protect against

"the expense and vexation attending multiple lawsuits, conserve judicial

resources, and foster reliance on judicial action by minimizing the

possibility of inconsistent decisions" while precluding parties from bringing

claims they have already had a full and fair opportunity to litigate.

*Montana v. United States*, 440 U.S. 147, 153-54, 99 S.Ct. 970, 973-74

(1979).

     As an initial matter it is worth noting that Richard Hallock was not a

party to either of the previous actions, a circumstance which normally

would dictate against the application of *res judicata*.  Pursuant to the

"deep-rooted historic tradition that everyone should have his own day in

court," a person is "not bound by a judgment *in personam* in a litigation in

which he is not designated as a party or to which he [or she] has not been

made a party by service of process."  *Taylor*, 553 U.S. at ___ 128 S. Ct. at

2171.  There are, however, certain exceptions to this general rule against

nonparty preclusion, including when "(1) a person agrees to be bound by

the determination of issues in an action between others" (such as when a

defendant's liability is determined in one "test case,") (2) when there are

certain "pre-existing 'substantive legal relationship[s]' between the person

18

to be bound and a party to the judgment" (such as preceding and succeeding owners of property, bailee and bailor, and assignee and assignor), (3) in certain limited circumstances, "a nonparty may be bound by a judgment because she was 'adequately represented by someone with the same interests who [wa]s a party' to the suit" (such as in class actions and suits brought by fiduciaries), (4) a nonparty "'assume[d] control' over the litigation in which the judgment was rendered" (such as having the opportunity to present proofs and arguments), (5) a  person who did not participate in the litigation "later brings suit as the designated representative of a person who was a party to the prior adjudication" (also known as relitigating through a proxy), and (6) when a statute "expressly foreclose[s] successive litigation by nonlitigants . . . if the scheme is otherwise consistent with due process"  *Id*. at 2172-73.

It may be that Richard Hallock and Susan Hallock should be considered to be in privity for purposes of the *res judicata* analysis by virtue of their business and familial relationships.  *See Ferris v. Cuevas*, 118 F.3d 122, 128 n. 6 ("[b]usiness partners are generally held to be in privity for the purposes of business activities.") (2d Cir. 1997) (citing *A to Z Assocs. v. Cooper*, 161 Misc.2d 283, 613 N.Y.S.2d 512 (1993)); *see also*

*Jaffree v. Wallace*, 837 F.2d 1461 (11th Cir. 1988) (noting that a familial relationship does constitute an important factor when assessing preclusive effects of prior adjudication)*; Eubanks v. FDIC*, 977 F.2d 166, 170 (5th Cir.1992) (holding wife bound by outcome of bankrupt husband's prior action); *Terrell v. DeConna*, 877 F.2d 1267, 1270-73 (5th Cir.1989) (holding that a wife bringing a loss-of-consortium claim cannot relitigate issues that had been decided in her husband's personal injury suit).  I find it unnecessary, however, to decide this issue in light of the obvious distinction between the nature of this proceeding and those lawsuits brought by Sue Hallock.          *Res judicata*, or "claim preclusion generally prevents litigation of any ground that could have been advanced in the earlier suit in support of the claim… made there…".  *USM Corp. v. SPS Technologies, Inc.*, 694 F.2d 505, 508 (7th Cir.1982), *cert. denied*, 462 U.S. 1107, 103 S.Ct. 2455 (1983).  It is well settled, however, that a prior judgment "cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case."  *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328, 75 S.Ct. 865 (1955).  Similarly, *res judicata* does not bar subsequent litigation when the court in the prior action could not have awarded the relief

20

requested in the new action.  *See, e.g., Leather v. Eyck*, 180 F.3d 420, 425 (2d Cir.1999); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

Although the current claim springs from the same set of core underlying facts, the claims at issue in the prior actions and those asserted in the current proceeding are distinct.  Here, plaintiff's 41(g) motion does not seek damages for constitutional violations or to compensate for the destroyed property, as did Susan Hallock in the previous actions.  Instead, the plaintiff asserts that computer data images that are reproductions of the original data are still in the possession of the defendant and, accordingly, demands their return.  Further, the plaintiff contends that the first time he could have known about these images was in April of 2005 when the defendant allegedly provided him with discovery indicating that it retained copies of the data, which was after the earlier Hallock suits were initiated.

In sum, plaintiff's claim and the relief requested is different than those of the previous Hallock suits, and in light of plaintiff's allegations that he did not know that the government had retained copies of his hard drives, it is possible that plaintiff could not have interposed the claims raised in this lawsuit at the time of the earlier actions.  For these reasons,

I recommend a finding that this proceeding is not precluded by *res judicata*. *See Henderson v. U.S. Radiator Corp.*, 78 F.2d 674 (10th Cir. 1935) (causes of action by wife for damages for destruction were distinct from former cause of action by wife and husband for damages joint to realty because they could not have been joined in the same action).

IV.   SUMMARY AND CONCLUSION

Nearly nine years after the execution of a search warrant at his home, out of which he and his wife operated a business, and following repeated but failed efforts, including two prior lawsuits, to obtain either compensation for the destroyed property or the restoration of his computer data, plaintiff commenced this proceeding for the return of copies of computer data that was seized, asserting that he discovered in April of 2005 that the United States has maintained hard drive copies that would permit plaintiff to access the necessary data.  Unfortunately, in responding to the motion the defendant has provided no indication as to whether Hallock's property, and specifically the copies claimed, remains in its possession.  Instead, the defendant contends that the plaintiff's motion should be denied on statute of limitations grounds and as barred by *res judicata*.  Having carefully reviewed the record before the court, I find that

material questions of fact exist as to whether Hallock has standing to bring this proceeding, whether the statute of limitations should be equitably tolled, and whether the defendant remains in possession of the disputed property, and that all of those issues must be resolved by way of an evidentiary hearing before a determination on the motion can be made.

Also included within Hallock's pleading are allegations that he suffered violations of various constitutional rights.  To the extent that plaintiff seeks damages for these alleged violations, I have construed his complaint as asserting *Bivens* claims, and have found that they are time-barred.

Accordingly, it is hereby respectfully

RECOMMENDED that plaintiff's claims for recovery of damages for violation of his constitutional rights be dismissed; and it is further

RECOMMENDED that an evidentiary hearing be scheduled to address the factual issues of whether Hallock has standing to bring this proceeding, whether the statute of limitations should be equitably tolled, and whether the defendant remains in possession of the property at issue.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed

with the clerk of the court within FOURTEEN days of service of this report.

 FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d),

72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

report and recommendation upon the parties in accordance with this

court's local rules.

Dated:      July 28, 2010
            Syracuse, New York

David E. Peebles
U.S. Magistrate Judge

24



Slip Copy, 2009 WL 3007379 (S.D.N.Y.)
(Cite as: 2009 WL 3007379 (S.D.N.Y.))

**C**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Eliot S. SASH, Plaintiff,
v.
UNITED STATES of America et al., Defendants.
**No. 09 Civ. 450(DC).**

Sept. 22, 2009.

Eliot S. Sash, Closter, NJ, pro se.

Preet Bharara, Esq., United States Attorney for the Southern District of New York, by: David Bober, Esq., Assistant United States Attorney, New York, NY, for the Federal Defendants.

Michael A. Cardozo, Esq., Corporation Counsel for the City of New York, by: Matthew Weir, Esq., Assistant Corporation Counsel, New York, NY, for the City Defendants.

### MEMORANDUM DECISION

CHIN, District Judge.

**\*1** In 2003, plaintiff *pro se* Eliot S. Sash was convicted of, *inter alia,* selling counterfeit law enforcement badges. After he completed his sentence, he commenced this action against the United States and several federal officials (the "Federal Defendants"), and several New York City officials, including the New York City Police Department ("NYPD") Property Clerk (collectively, the "City Defendants"), seeking a return of property under Federal Rule of Criminal Procedure 41(g). Sash's complaint also apparently asserted a claim against the City

Defendants under 42 U.S.C. § 1983, arising out of the same facts underlying his 41(g) motion.

Sash argues the property-specifically, thousands of badges, badge-making equipment, and law enforcement paraphernalia-should be returned because it does not constitute contraband and because he was not using the property for illegitimate purposes. Sash also argues that the City Defendants violated his constitutional rights by refusing to return the property to him.

Before the Court are motions by the Federal Defendants and the City Defendants to dismiss Sash's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motions are granted, and the complaint is dismissed.

Defendants move for an order revoking Sash's *in forma pauperis* ("IFP") status in the current action and also prospectively, on the ground that Sash is a serial litigant who has abused his IFP status by filing dozens of frivolous lawsuits. In addition, defendants seek an order requiring Sash to obtain judicial permission before filing any future lawsuits. Defendants' motion is granted.

### BACKGROUND

#### A. Facts[FN]

> FN1. Sash has a lengthy criminal history, with at least eleven arrests and eight convictions, including a 2003 conviction for attempting to defraud the Social Security Administration by falsely claiming his wife had died in the September 11, 2001 attacks on the World Trade Center. (*See* 11/5/03 PSR at 14-19).

On May 10, 2001, Sash was arrested by the FBI and hundreds of badges and badge-making equipment were seized. (Compl. at 3). The charges were later dropped.[FN2]

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3007379 (S.D.N.Y.)
(Cite as: 2009 WL 3007379 (S.D.N.Y.))

FN2. None of the parties provides any information regarding Sash's 2001 arrest.

On September 4, 2002, federal and state officials executed a search warrant at Sash's home in Yonkers, New York. *United States v. Sash,* 396 F.3d 515, 517 (2d Cir.2005). The search uncovered thousands of false federal, state, and local identification documents and badges, along with the tools, computers, and printers necessary to manufacture such documents and badges. *Id.* Sash was not authorized to manufacture any of the badges or documents found. *Id.*

On November 27, 2002 Sash was charged in a twenty-one count indictment with producing, and unlawfully possessing with intent to transfer, hundreds of NYPD badges and ID cards; selling counterfeit badges through the mail; and making false statements to federal customs officials. *Id.*

On December 30, 2002, while free on bail, Sash was arrested in New Jersey for defrauding a K-Mart department store. His bail was revoked, and he was charged in a superseding indictment that included charges relating to Sash's attempt to defraud K-Mart. *Id* . He later agreed to plead to an information, and pled guilty on September 30, 2003 to access device fraud and unlawful transfer of police badges. *Id.* at 518. On January 13, 2004, Judge Casey sentenced Sash to twenty-seven months in prison followed by eight years of supervised release, which was subsequently lowered to two years and nine months. *Id.* As a special condition of his supervised release, Sash was explicitly prohibited from

**\*2** possess[ing] any law-enforcement equipment, such as New York Police Department shields and badges, that [he was] not authorized to possess, [and] ... possess[ing] any raw materials, inventory, or badge components that could be used to manufacture law-enforcement equipment that [he was] not authorized to manufacture.

*United States v. Sash,* 444 F.Supp.2d 224, 228 (S.D.N.Y.2006).

On March 3, 2006, after Sash completed his sentence and was subject to supervised release, Sash's Probation Officer conducted a search of his home. *Id.* at 226. That search uncovered a number of NYPD badges and shirts, which Sash was prohibited from possessing. *Id.* A subsequent search took place on March 6, 2006 and revealed, as Judge Casey later put it, "enough law-enforcement equipment to outfit a small police force." *Id.* at 228. Sash possessed, *inter alia,* NYPD uniforms, NYPD badges, Department of Defense badges, seals used to make FBI, Department of Justice, and Customs Service badges, and several fake handguns. *Id.* at 227.

On March 6, 2006, the Probation Office filed a Request for Court Action, charging Sash with two violations of supervised release-possessing law enforcement badges and equipment, and lying to his Probation Officer. Sash, who denied both charges, was arrested that same day. *Id.* at 225. Judge Casey held a hearing on April 4, 2006, and on August 2, 2006 issued a decision, concluding that Sash had committed the two violations. *Id.* On September 25, 2006, Judge Casey sentenced Sash to twenty-four months in prison and twelve months of supervised release. *United States v. Sash,* 02 Cr. 1519 (S.D.N.Y.2002) (Docket Entry 73).

**B. *Procedural History***

Upon his release from prison in late 2007, Sash moved, pursuant to Federal Rule of Criminal Procedure 41(g), for the return of his property seized in 2001, 2002, and 2006. The property in possession of the Probation Office generally includes law enforcement pins, tie clips, uniforms (including clothing), money clips, badges, utility belts, DVDs, fake ammunition, fake ammunition magazines, and fake firearms. (Merrigan Decl. Ex. A (full catalog of items); Arce Decl. ¶ 5). The property in possession of the NYPD Property Clerk generally includes thousands of NYPD badges, hundreds of other badges, thousands of molds for producing NYPD badges, police shields and shield components, ten fake firearms, a variety of government identification cards and identification documents, two police vehicle identification plaques, assorted police paraphernalia, business and personal records, a computer along with parts and hardware, and $869 in United States currency. (Weir Decl. Ex. C (full catalog of items)).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3007379 (S.D.N.Y.)
(Cite as: 2009 WL 3007379 (S.D.N.Y.))

On October 14, 2008, Judge Kaplan, to whom Sash's criminal case had been reassigned, issued an order that Sash's 41(g) motion should, consistent with Second Circuit precedent, *see Onwubiko v. United States, 969 F.2d 1392, 1397 (2d Cir.1992),* be treated as a complaint in a new civil case, as the criminal proceedings were complete. In an order dated January 15, 2009, Judge Kaplan ordered that a new civil case be opened, and approved Sash's petition to proceed IFP. The case was reassigned to me the next day.

**\*3** On February 5, 2009, Sash filed an amended complaint, full of elaborate conspiracy theories as to how he was "persecuted" by the City and Federal Defendants for his "legitimate" badge-making business. The complaint cast aspersions not only on the Assistant United States Attorney who prosecuted Sash, but also the late Judge Casey. (Compl. at 11 ("The Pro-Se Plaintiff appealed but the appeal was allegedly not filed due to the clandestine orders and interference of Judge Casey.")).

Liberally construed, the amended complaint appears to assert two claims: First, a claim against all defendants for the return of property pursuant to Rule 41(g); and second, a claim against the City Defendants for the violation of Sash's constitutional rights under 42 U.S.C. § 1983.

These motions followed, and Sash responded to both motions.

### DISCUSSION

Three principal issues are raised by the instant motions: First, whether Sash is entitled to the return of the property in possession of the City and Federal Defendants; second, whether Sash's 1983 claim against the City Defendants can proceed; and third, whether Sash's IFP status should be revoked in this action and he should be enjoined from filing future lawsuits without judicial permission. I address each issue in turn.

### A. Sash's 41(g) Motion

For the reasons set forth below, Sash's motion is denied, as all the property he seeks return is contraband.

### 1. Federal Rule of Criminal Procedure 41(g)

Federal Rule of Criminal Procedure 41(g) [FN3] provides as follows:

> FN3. Rule 41(g) was previously designated as 41(e), and was amended without substantive change in 2002. *See Adeleke v. United States, 355 F.3d 144, 147 n. 1 (2d Cir.2004).*

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

As a procedural matter, when a criminal case is closed and the defendant moves under Rule 41(g), that motion is treated as a civil complaint invoking the district court's equitable jurisdiction. *See Onwubiko, 969 F.2d 1392, 1397 (2d Cir.1992); Ramsden v. United States, 2 F.3d 322, 324 (9th Cir.1993).*

While a Court considering a Rule 41(g) motion is, under the plain language of the rule, required to "receive evidence on any factual issue necessary to decide the motion," this requirement can be satisfied by sworn affidavits, and the Court need not hold a hearing. *See United States v. Cardona-Sandoval, 518 F.3d 13, 17 (1st Cir.2008); United States v. Stevens, 500 F.3d 625, 629 (7th Cir.2007).*

To prevail on a Rule 41(g) motion, the moving party "must demonstrate that (1) he is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3007379 (S.D.N.Y.)
(Cite as: 2009 WL 3007379 (S.D.N.Y.))

government's need for the property as evidence has ended." *Ferreira v. United States,* 354 F.Supp.2d 406, 409 (S.D.N.Y.2005) (internal citations and quotations omitted). It is not clear whether the moving party has the burden to show that he is entitled to the property, or whether the Government must show that the moving party is not entitled to it. *Compare Santos v. United States,* Nos. 04 Civ. 6716(JFK), 2005 U.S. Dist. LEXIS 4224, at *3 (S.D.N.Y. Mar. 17, 2005) ("At the conclusion of a criminal proceeding, the evidentiary burden for a Rule 41(g) motion shifts to the Government because there is a presumption that the person from whom the property was allegedly taken has a right to its return.") (internal citation and quotations omitted), *and United States v. Chambers,* 192 F.3d 374, 377 (3d Cir.1999) (holding that burden, on 41(g) motion, "shifts to the government when the criminal proceedings have terminated"), *with United States v. Nelson,* 190 Fed. Appx. 712, 715 (10th Cir.2006) ("The defendant bears the burden of establishing under Rule 41(g) that the retention of the property by the government is unreasonable.") (internal citation and quotations omitted), *and* 3A Charles Alan Wright, Nancy J. King & Susan R. Klein, Federal Practice and Procedure § 673 (3d ed. 2004) ("The movant is required to show that he is entitled to lawful possession of the property.").[FN4] I conclude, however, that it is the moving party's burden. The moving party in these cases has been convicted of a crime, and he is the one seeking relief from the Court. It is therefore reasonable to require the movant to show that the Government is not entitled to retain any property seized.

FN4. The Second Circuit has not addressed this issue.

**\*4** Courts have recognized two types of contraband: Contraband per se and derivative contraband. "An object is contraband per se if its possession, without more, constitutes a crime; or in other words, if there is no legal purpose to which the object could be put." *United States v. Harrell,* 530 F.3d 1051, 1057 (9th Cir.2008). A controlled substance, for example, is contraband per se, and courts will not "entertain a claim contesting the confiscation of contraband per se because one cannot have a property right in that which is not subject to legal possession." *Cooper v. Greenwood,* 904 F.2d 302, 305 (5th Cir.1990).

The concept of derivative contraband is more expansive, and includes "things that are not ordinarily illegal, like guns, automobiles, ships, and currency, that become forfeitable because of their relationship with a criminal act." *United States v. 37.29 Pounds of Semi-Precious Stones,* 7 F.3d 480, 485 (6th Cir.1993); *accord Vitrano v. United States,* No. 06 Civ. 6518(JCF), 2009 WL 1011582, at *5 (S.D.N.Y. Apr.14, 2009) (derivative contraband includes "items which are not inherently unlawful but which may become unlawful because of the use to which they are put"). For example, in *United States v. Pascucci,* the Ninth Circuit affirmed the district court's denial of a 41(e) motion where a defendant convicted of extortion sought to have returned a typewriter, tapes, and photographs that were used as part of the crime. Nos. 92-10440, 92-10698, 1993 U.S.App. LEXIS 20241, at ----3-4, 1993 WL 290900 (9th Cir. Aug.4, 1993). The Ninth Circuit concluded that "[a]lthough the confiscated property was not inherently illegal, the property constituted 'derivative contraband' based upon [defendant's] illegal usage." *Id.* at *4.

**2. Application**

Here, I conclude that Sash has not met his burden of proving that he is entitled to the return of the property. Accordingly, the motion is denied.

Sash was convicted of unlawful transfer of badges and ID cards, and now seeks the return of the very badges and identification cards that formed the basis of his conviction, as well as the equipment he used to illegally manufacture the badges and identification cards. The badges and identifications themselves are contraband per se, as it is illegal for Sash to manufacture them under federal, state, and local law. *See* 18 U.S.C. § 1028(a), N.Y. Penal Law §§ 170.25, 170.40, and N.Y.C. Admin. Code § 14-107.

The remaining items are derivative contraband, as they were used by Sash for unlawful purposes-namely, impersonating law enforcement officers, manufacturing or creating unauthorized badges and identifications, and selling false identification and badges. The DVDs were seized as part of Sash's scheme to defraud K-Mart. (9/18/09 Gov't Ltr.). As to the money Sash seeks returned, it would also appear to be derivative contraband, i.e., the

Slip Copy, 2009 WL 3007379 (S.D.N.Y.)
(Cite as: 2009 WL 3007379 (S.D.N.Y.))

proceeds of Sash's illegal badge-selling business.[FN5] Sash has not, in any event, met his burden of showing the money was not the proceeds of his crime.

> FN5. Though not addressed by any of the defendants, the Court notes that when Judge Casey sentenced Sash in 2004, he also imposed restitution in the amount of $2,000. It appears from a review of the docket that Sash has only paid $200 of the $2,000 imposed. To the extent that restitution is still outstanding, the $869 should be applied to it.

**5** The Court will not order property returned to Sash so that he can continue to violate the law. As the Eighth Circuit has held, it "makes scant sense to return to a convicted drug dealer the tainted tools used or intended to be used in his illegal trade when the same were lawfully seized." *United States v. Felici,* 208 F.3d 667, 671 (8th Cir.2000). So, too, here. Accordingly, he has no right to the return of any of these items.[FN6]

> FN6. In his April 4, 2009 letter, Sash also claims that he has obtained a release from Assistant United States Attorney Harry Chernoff authorizing the NYPD Property Clerk to release certain-unspecified-property to Sash. To the extent that such a release exists, Sash may present it to the City Defendants and they shall release the specified property to Sash within ten days after presentment of the release.

Sash appears to advance two arguments in support of his motion, both of which are rejected.

First, Sash appears to argue that he was legally entitled to possession of the badges and uniforms. Judge Casey has already addressed this argument and rejected it, concluding that it "strains credulity on numerous fronts." *Sash,* 444 F.Supp.2d at 229. This issue will not be relitigated now.

Second, he appears to argue that, because the defendants have not commenced forfeiture proceedings against Sash's property, they have no defense to his 41(g) motion. This argument is meritless. There is no requirement that the government seek to forfeit Sash's property, and its decision not to do so does not "prevent the government from being able to assert, in resistance to a Rule 41(e) motion, a limited derivative contraband theory." *United States v. Felici,* 208 F.3d 667, 671 (8th Cir.2000).

For these reasons, the motions to dismiss Sash's 41(g) claim are granted.

**B. *Sash's 1983 Claim***

Sash's complaint asserts a claim under 42 U.S.C. § 1983 for violation of his Fourth Amendment right. Because Sash's claim arises out of an alleged deprivation of his property, his claim is more appropriately considered under the Due Process Clause of the Fourteenth Amendment. *See Hudson v. Palmer,* 468 U.S. 517, 531, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

To succeed on a claim for deprivation of property without due process of law, "a plaintiff must first identify a property right, second show that the state has deprived him of that right, and third show that the deprivation was effected without due process." *Local 342, Long Island Pub. Serv. Employees v. Town Bd.,* 31 F.3d 1191, 1194 (2d Cir.1994) (internal citation and quotations omitted).

To satisfy the first element, Sash must prove that he had a protected interest in the property. *See Grossman v. Axelrod,* 646 F.2d 768, 771 (2d Cir.1981) (holding that "a valid liberty or property interest is an essential prerequisite to the successful assertion of due process rights"). The law is clear, however, that a plaintiff cannot have a legally protected interest in contraband. *See Vitrano v. United States,* 06 Civ. 6518(JCF), 2009 U.S. Dist. LEXIS 32550, at *16 (S.D.N.Y. Apr. 14, 2009) (" '[S]ociety recognizes no legitimate property interest in contraband.' ") (quoting *Matter of Search Warrant for Premises Located at 233 J.B. Wise Place,* Misc. No. 1469, 1987 U.S. Dist. LEXIS 10890, at *4 (N.D.N.Y. Nov. 23, 1987)); *United States v. Goodwin,* 449 F.3d 766, 770 (7th Cir.2006) (no legally protected interest in contraband). As discussed above, the property Sash seeks returned is contraband. Because he

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3007379 (S.D.N.Y.)
(Cite as: 2009 WL 3007379 (S.D.N.Y.))

does not have a protected interest in the contraband, defendants' allegedly unlawful possession of the property cannot give rise to a 1983 claim. Accordingly, Sash's 1983 claim is dismissed.

## C. *Defendants' Request for an Injunction and Revocation of Sash's IFP Status*

**\*6** Defendants seek to have Sash's IFP status revoked in this action and prospectively, and to enjoin Sash from filing future lawsuits without permission of the Court. The basis for defendants' request is Sash's history of filing frivolous lawsuits.

For the reasons that follow, Sash's IFP status is revoked in this action and prospectively, and Sash is hereby enjoined from filing any further lawsuits in federal court without first obtaining judicial permission.

## 1. *Sash's History of Litigiousness*

Sash has been dubbed a "frequent filer in the federal courts in this Circuit." *Sash v. Laird,* No. 06 Civ. 6052(LB), 2008 WL 2816019 at \*1 (E.D.N.Y. July 21, 2008). In the past five years, Sash has been the plaintiff in at least twenty-four different cases, in this and other districts, the vast majority of which have been dismissed. Some of Sash's cases include the following: *Sash v. Rosahn,* 08 Civ. 4032(BSJ) (S.D.N.Y.2008) (suing Legal Aid for malpractice-summary judgment granted); *Garland-Sash v. United States,* 08 Civ. 3609 (D.N.J.2008) (motion to dismiss pending); *Sash v. Plumer,* 07 Civ. 5536(SHS) (S.D.N.Y.2007) (suing probation officer for alleged errors in his PSR-motion to dismiss granted); *Sash v. Parks,* 06 Civ. 4218(MBM) (S.D.N.Y.2006) (seeking money damages from the Bureau of Prisons and various federal defendants-motion to dismiss granted); *Sash v. Laird,* 06 Civ. 6052(LB) (E.D.N.Y.2006) (habeas corpus-dismissed for lack of jurisdiction; certificate of appealibility denied); *Sash v. Bureau of Prisons,* 06 Civ. 5908(ENV) (E.D.N.Y.2006) (alleging that prison officials wrongfully seized religious paraphernalia-dismissed as moot); *Sash v. Zenk,* 05 Civ. 3542(LAK) (S.D.N.Y.2005) (habeas action alleging violation of Interstate Agreement on Detainers and ineffective assistance of

counsel-dismissed as "meritless"); *Sash v. City of New York,* 05 Civ. 1544(DAB) (S.D.N.Y.2005) (seeking $150 million from New York City and various municipal defendants for, *inter alia,* false arrest, libel and slander-motion to dismiss granted); *Sash v. Dudley,* 05 Civ. 7498(SAS) (S.D.N.Y.2005) (seeking $55 million from former attorney for alleged legal malpractice-dismissed on summary judgment); *Sash v. Callahan,* 05 Civ. 8798(CM) (S.D.N.Y.2005) (seeking $35 million for tort and contract claims-dismissed for lack of subject matter jurisdiction); *Garland-Sash v. Stutz,* 05 Civ. 4207(ENV) (E.D.N.Y.2005) (seeking over $25 million from former attorney for legal malpractice-dismissed as time-barred); *Sash v. New York State Division of Parole,* 05 Civ. 231(NGG) (E.D.N.Y.2005) (challenging location of imprisonment-dismissed for failure to prosecute); *Sash v. Schwartz,* 04 Civ. 9634(DC) (S.D.N.Y.2004) (suing former attorney for malpractice-dismissed on summary judgment); *Sash v. Zenck,* 04 Civ. 2503(ENV) (E.D.N.Y.2004) (habeas corpus action dismissed as not cognizable on habeas review); *Sash v. Zenck,* 04 Civ. 2476(NGG) (E.D.N.Y.2004) (mandamus action seeking to compel BOP to recalculate credit toward service of sentence-dismissed as moot); *Sash v. Fed. Bureau of Prisons,* 04 Civ. 2106(ENV) (E.D.N.Y.2004) (variety of tort claims, including denial of medication and denial of visitation-dismissed on a variety of grounds); *Sash v. City of New York, et al.,* 04 Civ. 976(ENV) (E.D.N.Y.2004) (suing thirty-eight named defendants and twenty-five unnamed defendants for various constitutional violations-motion to dismiss granted); *Sash v. Clinton County, et al.,* 03 Civ. 1321(TJM) (N.D.N.Y.2003) (coram nobis-dismissed for attempting to circumvent habeas corpus remedy).

**\*7** One of Sash's legal filings merits particular attention. In 2006, after pleading guilty before Judge Casey, Sash filed a motion seeking over $100,000 in attorneys' fees and expenses pursuant to the Hyde Amendment, which permits a "prevailing party" in a criminal case to recoup attorneys' fees and expenses "where the court finds that the position of the United States was vexatious, frivolous, or in bad faith." Pub.L. No. 105-119, § 617, 111 Stat. 2440, 2519 (1997), reprinted in 18 U.S.C. § 3006. Judge Casey denied the motion, concluding that the government's position "was not only not 'vexatious, frivolous, or in bad faith,' it was both justified and successful." *United States v. Sash,* No. 02 Cr. 1519(RCC), 2006 WL 156475, at \*2

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3007379 (S.D.N.Y.)
(Cite as: 2009 WL 3007379 (S.D.N.Y.))

(S.D.N.Y. Jan. 18, 2006). Judge Casey also noted that "Sash may very well be the first criminal defendant in the limited history of the Hyde Amendment to seek damages following a prosecution in which he was convicted, and is almost certainly the first to seek such following a conviction based upon a guilty plea." *Id.*

When his cases have been dismissed, Sash has regularly appealed, despite district courts' express finding that an appeal would not be in good faith. For example, in *Sash v. Parks,* then-Chief Judge Mukasey dismissed Sash's complaint and certified, pursuant to 28 U.S .C. § 1915(a)(3), that any appeal from the Court's dismissal order would not be taken in good faith. 06 Civ. 4218(MBM) (S.D.N.Y.2006) (Docket Entry 3). Sash nevertheless appealed, and the Second Circuit dismissed the appeal, concluding that Sash's appeal "lack [ed] an arguable basis in fact or law." *Id.* (Docket Entry 6).[FN7] Similarly, in *Sash v. Clinton County et al.,* Judge McAvoy declined to issue a certificate of appealability, but Sash appealed. No. 03 Civ. 1321(TJM) (N.D.N.Y.2003). The Second Circuit dismissed, once again concluding that Sash's appeal lacked an arguable basis in law or fact. *Sash v. Parks,* No. 06-3602-CV (2d Cir.2006).

> FN7. As a matter of law, a complaint that "lacks an arguable basis either in law or in fact" is frivolous. *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

**2.** *Applicable Law on a Filing Injunction*

The ability to proceed IFP "is not a constitutional right, but rather a congressionally created benefit." *Polanco v. Hopkins,* 510 F.3d 152, 156 (2d Cir.2007). The Second Circuit has held that a district court not only has the authority, but also an obligation, to deny this benefit to a litigant who has demonstrated a history of filing frivolous and vexatious claims. *See In re Martin-Trigona,* 737 F.2d 1254, 1261 (2d Cir.1984) ("Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions."); *accord Hurt v. Soc. Sec. Admin.,* 544 F.3d 308, 310, (D.C.Cir.2008) (revoking plaintiff's IFP status after finding "the number, content, frequency, and disposition" of filings to show "abusive

pattern, aimed at taking advantage of the IFP privilege").

In *Safir v. United States Lines, Inc.,* the Second Circuit set forth five factors for courts to consider in determining whether to revoke a litigant's IFP status:

> **\*8** (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

792 F.2d 19, 24 (2d Cir.1986).

**2.** *Application*

Based on the factors set forth by the Second Circuit in *Safir,* I conclude that an injunction is warranted.

As to the first factor, Sash's history of litigation, set forth above, clearly weighs in favor of an injunction. It appears, for example, that every time Sash has been arrested he has sued the arresting officers, and every time he has been represented by counsel he has sued his attorney for malpractice. Moreover, Sash has evidenced a willful disregard for the judicial process by appealing even where he has not been told that an appeal would not be in good faith.

The second factor also weighs in favor of an injunction. Sash could not have a reasonable belief that he would prevail in the actions described above, many of which seek millions and millions of dollars in damages arising out of perceived slights or conspiracy theories.

Sash is not represented by counsel, which also weighs in favor of an injunction.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3007379 (S.D.N.Y.)
(Cite as: 2009 WL 3007379 (S.D.N.Y.))

The fourth factor is perhaps the strongest reason to enjoin Sash from future IFP filings. Sash's litigiousness has serious consequences, as it imposes an immeasurable burden on the defendants he sues and the judicial system. Each frivolous lawsuit Sash files requires government attorneys to devote finite resources to defending it, and the judicial system is similarly taxed. Moreover, every minute spent by government attorneys and the judicial system on Sash's frivolous claims is a minute not spent on potentially meritorious cases. Enough is enough.

The fifth factor similarly weighs in favor of an injunction. In a case before Judge Stein, the Federal Defendants moved to dismiss Sash's complaint and for a filing injunction. *Sash v. Plummer,* 07 Civ. 5536(SHS) (S.D.N.Y.2007). Judge Stein granted the motion to dismiss but denied the motion for an injunction, concluding that the dismissal of Sash's complaint itself "may suffice to eliminate future frivolous or malicious filings" by Sash. (*Id.* docket entry 18). Since Judge Stein's decision, Sash has filed two new lawsuits and commenced two new appeals. He has not learned his lesson, and it is clear that no number of dismissals will deter his litigiousness.

Sash's only argument against an injunction is that res judicata bars the Government from seeking it, on the ground that Judge Stein has previously denied the same motion. Res judicata bars relitigation of a claim based on a prior decision if that prior decision was "(1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *EDP Med. Computer Sys. v. United States,* 480 F.3d 621, 625 (2d Cir.2007). Here, Sash has filed four lawsuits or appeals since Judge Stein issued his decision, and thus this case cannot be said to involve the same cause of action.

**\*9** For these reasons, the request for an injunction is granted. Sash's IFP status is hereby revoked in this action [FN8] and prospectively. Sash will not be able to proceed IFP in any future lawsuits in this or any other federal court in the country. In addition, Sash shall, prior to filing any future lawsuit in federal court, first obtain judicial permission to do so. In seeking such permission, Sash

shall provide a copy of this decision along with his proposed complaint.

> FN8. Because I have dismissed the complaint, Sash need not pay the filing fee to the District Court. If Sash chooses to appeal, however, he will have to pay the filing fee for his appeal.

### CONCLUSION

For the foregoing reasons, the motions to dismiss are granted, and the complaint is dismissed, with prejudice. Sash's IFP status is revoked in this action and prospectively. Sash is prohibited from filing any future lawsuits without judicial permission. The Clerk of Court is directed to enter judgment accordingly and to close the case.

I hereby certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this decision would not be taken in good faith.

SO ORDERED.

S.D.N.Y.,2009.
Sash v. U.S.
Slip Copy, 2009 WL 3007379 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

2005 U.S. Dist. LEXIS 4224, *



LEXSEE 2005 US DIST LEXIS 4224

**EDELMIRO SANTOS, Petitioner, -against- UNITED STATES OF AMERICA, Respondent.**

**04 Civ. 6716 (JFK), S4 99 Cr. 73 (JFK)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2005 U.S. Dist. LEXIS 4224*

**March 17, 2005, Decided
March 17, 2005, Filed**

**PRIOR HISTORY:** *Rosario-Dominguez v. United States, 353 F. Supp. 2d 500, 2004 U.S. Dist. LEXIS 15995 (S.D.N.Y., 2004)*

**DISPOSITION:** Government ordered to return petitioner's identification papers or provide documentary evidence that it no longer possesses them.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Petitioner inmate filed a pro se motion for the return of property pursuant to *Fed. R. Crim. P. 41(g)*. Respondent United States did not oppose the motion.

**OVERVIEW:** The inmate pleaded guilty to a two-count information charging him with controlled substance offenses, in violation of *21 U.S.C.S. §§ 846*, 924(c). The inmate claimed that his passport, issued by the Dominican Republic, his United States alien card, and his driver's license were seized at the time of his arrest. He moved for the return of these items and for such other relief as the court deemed proper. The government stated that none of the property was found in the files of the United States Attorney's Office where such property was ordinarily maintained. The government requested that the Drug Enforcement Administration review its files for the missing items and stated that it would return any found property. The court held that there was a presumption that the person from whom property was taken had a right to its return. The government could rebut the presumption by proving that it never had the property. The court noted that money damages could not be awarded because *Fed. R. Crim. P. 41(g)* did not waive

the government's sovereign immunity.

**OUTCOME:** The court directed the government to notify the court in approximately six weeks as to whether the property had been located. If any of the property was found, it was to be returned to the inmate. If it was not found, the government was required to provide documentary evidence that the property was no longer in the government's possession.

**LexisNexis(R) Headnotes**

*Criminal Law & Procedure > Postconviction Proceedings > General Overview*
*Governments > Legislation > Effect & Operation > Amendments*
[HN1] The 2002 amendments to *Fed. R. Crim. P. 41* reworded and renumbered the substance of *Rule 41(e)* as *Rule 41(g)*. These amendments did not enact any substantive changes, merely stylistic changes.

*Criminal Law & Procedure > Postconviction Proceedings > General Overview*
[HN2] See *Fed. R. Crim. P. 41(g)*.

*Civil Procedure > Equity > General Overview*
*Civil Procedure > Remedies > Damages > Monetary Damages*
*Criminal Law & Procedure > Appeals > Standards of Review > Harmless & Invited Errors > General Overview*

Case 6:09-cv-01141-DNH-DEP    Document 12    Filed 07/28/10    Page 34 of 35

Page 2
2005 U.S. Dist. LEXIS 4224, *

[HN3] Once a criminal case is concluded, the court construes a *Fed. R. Crim. P. 41(g)* motion as initiating a civil action in equity. The court may grant the petitioner equitable relief, but money damages are no longer available. The United States Court of Appeals for the Second Circuit has joined its sister circuits in holding that *Rule 41(g)*, which simply provides for the return of seized property, does not waive the sovereign immunity of the United States with respect to actions for money damages relating to such property.

***Criminal Law & Procedure > Postconviction Proceedings > General Overview***
***Criminal Law & Procedure > Appeals > Standards of Review > Harmless & Invited Errors > General Overview***
***Evidence > Procedural Considerations > Burdens of Proof > General Overview***
[HN4] At the conclusion of a criminal proceeding, the evidentiary burden for a *Fed. R. Crim. P. 41(g)* motion shifts to the government because there is a presumption that the person from whom the property was allegedly taken has a right to its return. The government may rebut the presumption by proving it has a legitimate reason for retaining the property or that it never had the property.

**COUNSEL:** [*1]  Edelmiro Santos, Plaintiff, Pro se, McRae, GA.

**JUDGES:** JOHN F. KEENAN, United States District Judge.

**OPINION BY:** JOHN F. KEENAN

**OPINION**

*MEMORANDUM OPINION AND ORDER*

**JOHN F. KEENAN, United States District Judge:**

Before the Court is Petitioner Edelmiro Santos's *pro se* motion for return of property pursuant to *Rule 41(g) of the Federal Rules of Criminal Procedure.* [1]

> 1   Petitioner frames his motion as one pursuant to *Rule 41(e)*. [HN1] The 2002 amendments to *Rule 41* reworded and renumbered the substance of *Rule 41(e)* as *Rule 41(g)*. These amendments did not enact any substantive changes, merely stylistic changes. *Sanchez-Butriago v. United States, 2003 U.S. Dist. LEXIS 11853, No. 00 Civ. 8820 (JFK), 2003 WL 21649431 at *2 n.1 (S.D.N.Y. July 14, 2003).*

*BACKGROUND*

On September 24, 1999, Santos pleaded guilty to a two-count information charging him with (1) conspiracy to distribute and possess with intent to distribute five kilograms and more of cocaine and one kilogram and more of heroin, in violation of *21 U.S.C. § 846* [*2]  and (2) using and carrying a firearm in relation to a drug trafficking crime, in violation of *18 U.S.C. § 924(c)*. The Court sentenced Santos to consecutive terms of 18 months on Count One and 60 months on Count Two, followed by three years of supervised release.

Santos claims that his passport, issued by the Dominican Republic, his United States alien card and his driver's license were seized at the time of his April 26, 1999 arrest. He moves for the return of these items and for such other relief as the Court deems proper. The Government does not oppose the motion. The Government advises the Court, however, that none of Santos's property has been found in the files of the United States Attorney's Office where such property is ordinarily maintained. The Government has requested that the Drug Enforcement Administration review its files for the missing items. The Government represents that it will return any found property to Santos.

*DISCUSSION*

*Rule 41(g) of the Federal Rules of Criminal Procedure* provides as follows:

> [HN2] A person aggrieved by . . . the deprivation of property may move for the property's return. The motion must be filed in the district [*3]  where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

*Fed. R. Crim. P. 41(g).* [HN3] Once a criminal case is concluded, the Court construes a *Rule 41(g)* motion "as initiating a civil action in equity." *Lavin v. United States, 299 F.3d 123, 127 (2d Cir. 2002)*. The Court may grant the petitioner equitable relief, but money damages are no longer available. Last year, the Second Circuit joined its sister circuits in holding that "*Rule 41(g)*, which simply provides for the return of seized property, does not waive the sovereign immunity of the United States with respect to actions for money damages relating to such property." *Adeleke v. United States, 355 F.3d 144, 151 (2d Cir. 2004)*.

[HN4] At the conclusion of a criminal proceeding, the evidentiary burden for a *Rule 41(g)* motion shifts to

2005 U.S. Dist. LEXIS 4224, *

the Government because there is a presumption that "the person from whom the property was allegedly taken has a right to its return.  [*4]  " *Mendez v. United States, 2003 U.S. Dist. LEXIS 12267, No. S2 94 Cr. 466(JFK), 99 Civ. 3496 (JFK), 2003 WL 21673616 at *2 (S.D.N.Y. July 16, 2003)*; *see United States v. Chambers, 192 F.3d 374, 377 (3d Cir. 1999)*. The Government may rebut the presumption "by proving it has a legitimate reason for retaining the property or that it never had the property." *Mendez, 2003 U.S. Dist. LEXIS 12267, 2003 WL 21673616 at *2*.

The Government does not contest that Santos is entitled to the return of his property. As the search obviously is still ongoing, the Government is directed to notify the Court no later than May 1, 2005 as to whether the property has been located. If any of the property at issue is found, the Government is directed to return it to Santos. If the property cannot be found, the Government must provide documentary evidence that the property no longer is in its possession. *See Chambers, 192 F.3d at 377-78*.

**SO ORDERED.**

**Dated: New York, New York**

**March 17, 2005**

**JOHN F. KEENAN**

**United States District Judge**